*Formatted for Electronic Distribution*          *For Publication*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:
    Barry Alton Parker,                         Chapter 13 Case
              Debtor.                          # 09-10186
_____

Barry Alton Parker,
              Plaintiff,
    v.                                            Adversary Proceeding
U.S. Bank National Association, as Trustee     # 09-1022
on behalf of the Holder of the Adjustable
Rate Mortgage Trust 2007-1, et al.,
              Defendants.
_____

*Appearances:*      Rebecca A. Rice, Esq.          Douglas J. Wolinsky, Esq.
                               *Cohen & Rice*                            Kevin Michael Henry, Esq.
                               *Rutland, VT*                             *Primmer Piper Eggleston & Cramer PC*
                               *For Barry Alton Parker*         *Burlington, VT*
                                                                              *For U.S. Bank National Association*

Filed & Entered
On Docket
March 18, 2011

**MEMORANDUM OF DECISION**
DENYING SUMMARY JUDGMENT MOTION OF U.S. BANK NATIONAL ASSOCIATION

        Barry Alton Parker (the "Debtor") filed a complaint (doc. # 1) to initiate this adversary proceeding on May 18, 2009. On August 27, 2009, U.S. Bank National Association (the "Bank") filed its answer (doc. # 3). The Bank filed the instant motion for summary judgment on December 15, 2010 (doc. ## 49, 50, 51), seeking dismissal of the Debtor's claim that the Bank lacks standing to enforce the mortgage note against the Debtor. For the reasons set forth below, the Court denies the Bank's motion.

**JURISDICTION**

        This Court has jurisdiction over this adversary proceeding and the Bank's motion for summary judgment under 28 U.S.C. §§ 1334 and 157(b)(2)(B).

**UNDISPUTED MATERIAL FACTS**

        Based upon the record in this proceeding, the Court finds the following facts to be material and undisputed:

1.      On November 10, 2006, the Debtor executed and delivered to Credit Suisse Financial Corporation ("Credit Suisse") two promissory notes; the note at issue was made in the original amount of $231,200 (the "Note") (doc. # 40, ¶ 1; doc. # 45, Undisputed Material Facts ¶ 1).

1

2.  Also on November 10, 2006, the Debtor executed a mortgage deed in favor of Mortgage Electronic Registration System, Inc. ("MERS") as nominee for Credit Suisse, as security for the Note (doc. # 40, ¶ 2; doc. # 45, Undisputed Material Facts ¶ 2).

3.  The Note was subsequently endorsed in blank by Patrick Brown, Post Closing-Manager for Lydian Data Services, as Attorney-in-Fact for Credit Suisse (doc. # 40, ¶ 7; doc. # 45, Undisputed Material Facts ¶ 3).

4.  After the Note was endorsed, it was transferred to the Bank, and the Bank is in possession of the original Note (doc. # 40, ¶ 8; doc. # 45, Undisputed Material Facts ¶ 6–7).

5.  The original Note was received by counsel for the Bank from the Bank with the allonge attached by a staple, and the Note was provided to counsel for the Debtor for review in the same condition (doc. # 51, ¶ 7; doc. # 56).

6.  On December 11, 2008, MERS assigned the mortgage to the Bank (doc. # 40, ¶ 9; doc. # 45, Undisputed Material Facts ¶ 8; doc. # 51, ¶ 6; doc. # 56).

7.  The assignment of mortgage was executed by Bill Koch, acting in the capacity of an officer of MERS, pursuant to a Corporate Resolution dated July 11, 2002 (doc. # 51, ¶ 6; doc. # 56).

8.  On December 19, 2008, the Bank filed a foreclosure complaint against the Debtor in Vermont state court (doc. # 40, ¶ 10).

9.  On February 25, 2009, the Debtor filed his bankruptcy petition (doc. # 40, ¶ 11).

10. At the time the Debtor filed his petition, no judgment had been entered in the state court action (doc. # 40, ¶ 12).

11. The Bank is trustee to the Adjustable Rate Mortgage Trust 2007-1, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2007-1 (the "Trust") (doc. # 45, Undisputed Material Facts ¶ 4).

12. The Trust is governed by a Pooling and Servicing Agreement dated February 1, 2007 (doc. # 40, ¶ 13; doc. # 45, Undisputed Material Facts ¶ 5).

13. On April 13, 2009, the Bank filed a proof of claim in the Debtor's bankruptcy case, based upon the Note (doc. # 40, ¶ 14).

14. The Note attached to the proof of claim was endorsed by an allonge in blank, even though there was room on the original Note to endorse it, and no original of the Note has been produced (doc. # 40, ¶ 15).

15. Although the allonge was signed by Patrick Brown, post-closing manager for Lydian Data Services, as Attorney-in-Fact for Credit Suisse, no power of attorney is attached to the proof of claim (doc. # 40, ¶ 16).

16. The Bank did not file an assignment of mortgage with its proof of claim (doc. # 40, ¶ 17).

17. On May 28, 2009, the Debtor filed his complaint in this adversary proceeding (doc. # 40, ¶ 18).

18. On December 14, 2010, Credit Suisse ratified the endorsement of Patrick Brown, Post Closing-Manager for Lydian Data Services, as Attorney-in-Fact for Credit Suisse; the Debtor contests the effectiveness of the ratification (doc. # 51, ¶ 8; doc. # 56).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that no genuine issue of material fact exists. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies those facts that are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary are not material. Id. In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Id. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir 2006). If the nonmoving party does not come forward with specific facts to establish an essential element of that party's claim on which it has the burden of proof at trial, the moving party is entitled to summary judgment. See Celotex Corp., 477 U.S. at 323–25 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case"); see also Tufariello v. Long Island R. Co., 458 F.3d 80, 85 (2d Cir. 2006).

## DISCUSSION

In his complaint, the Debtor objects to the Bank's proof of claim "on the basis of standing" (doc. # 1, ¶ 27). The Bank's position is that this argument fails as a matter of law because the Bank is the holder of the Note and the assignee of the mortgage (doc. # 50, p. 4).

Bankruptcy law does not specify the requirements for the enforcement of promissory notes. As a result, the legal obligations of parties disputing the validity of a promissory note are determined by applicable non-bankruptcy law, which is usually state law. See Butner v. United States, 440 U.S. 48, 54–55 (1979).

Vermont has adopted a version of the Uniform Commercial Code ("UCC") concerning negotiable instruments that applies to promissory notes. The relevant provision of Article 3, 9A V.S.A. § 3-101 et seq., describes a "[p]erson entitled to enforce" an instrument, in relevant part, as "(i) the holder of the instrument." 9A V.S.A. § 3-301. The general definitions section of Vermont's UCC defines a "holder," in relevant part, as "(A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." 9A V.S.A. § 1-201(21)(A). The section pertaining to unauthorized signatures provides, in relevant part, that:

> (a) Unless otherwise provided in this article or article 4, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this article.

9A V.SA. § 3-403(a).

It is undisputed that the Bank is in possession of the original Note (see Undisputed Material Facts ¶ 4, supra). At issue is whether the endorsement is valid, whether the Note is payable to the Bank as bearer, and thus whether the Bank is a holder under the Vermont UCC entitled to enforce the Note. The Debtor originally executed the Note in favor of Credit Suisse (see Undisputed Material Facts ¶ 1, supra); the Note was subsequently endorsed by an allonge in blank by Patrick Brown, Post Closing-Manager for Lydian Data Services as Attorney-in-Fact for Credit Suisse (see Undisputed Material Facts ¶¶ 3, 14, supra). The Bank did not attach to its proof of claim a copy of the power of attorney authorizing Mr. Brown to endorse the Note (see Undisputed Material Facts ¶ 15, supra), and that power of attorney is not part of the record in this adversary proceeding. On December 14, 2010, nearly twenty-two months after the Debtor filed his bankruptcy petition, Credit Suisse ratified the endorsement of Patrick Brown (see Undisputed Material Facts ¶¶ 9, 18, supra).

The Debtor argues that there is a genuine issue of material fact as to whether Mr. Brown was authorized to sign on behalf of Credit Suisse at the time the allonge was endorsed; the Debtor also

4

contests the effectiveness of the ratification to cure the defective endorsement.  There is no evidence in the record that Mr. Brown was authorized to sign on behalf of Credit Suisse at the time the allonge was endorsed.  However, on December 14, 2010, Credit Suisse expressly ratified Mr. Brown's endorsement.  See Undisputed Material Facts ¶ 18, supra; see also doc. # 51-3 ("Credit Suisse . . . ratifies and approves the indorsement of the Note by Patrick Brown, post Closing Manager for Lydian Data Services as the attorney-in-fact for Credit Suisse").  The leading commercial law treatises shed light on the issue of the effectiveness of ratification.  An unauthorized signature may be ratified expressly, thus binding the ratifying principal.  See 2 White & Summers, Uniform Commercial Code § 16-4 (5th ed. 2010).  A signature by an agent in excess of his or her authority may be ratified.  See 4 Hawkland UCC Series § 3-404:2 (2010).  Once a signature is ratified, it becomes effective as if authorized at the time made.  See id; see also 9A V.S.A. § 3-403, Official Comment 3 ("[r]atification is a retroactive adoption of the unauthorized signature . . .") (emphasis added).  Thus, the Court finds that upon ratification by Credit Suisse, the endorsement by Mr. Brown became effective as if it had been authorized at the time made.

This raises the question of when the allonge was endorsed, as the allonge endorsed by Mr. Brown is not dated.  The Bank argues that the timing of the endorsement is immaterial to the question of whether the Bank is the holder of the Note because regardless of when the Note was endorsed, it is now endorsed and in the Bank's possession.  See In re Wilson, 442 B.R. 10, 15, 2010 Bankr. LEXIS 4252, * 9–11 (Bankr. D. Mass. Nov. 29, 2010).  However, under relevant Vermont jurisprudence pertaining to foreclosure actions, "[i]n order to enforce a mortgage note, a plaintiff must show that it was the holder of the note at the time the Complaint was filed."  U.S. Bank Nat'l Assoc. as Trustee for RASC 2005 AHL1 v. Kimball, No. 6-1-09 Gicv (Vt. Super. Ct. Oct. 27, 2009) (Joseph, J.) (on appeal) (citing In re Gilpin, No. 09-10696 (Bankr. D. Vt. Oct. 7, 2009)) (emphasis added); see also In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) ("[t]o show standing . . . the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed"); In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. 2008), reversed on other grounds, 438 B.R. 661 (C.D. Cal. 2010); U.S. Bank Nat'l Assoc. v. White, 880 N.Y.S.2d 227 (Table), 2009 N.Y. Slip Op. 50100(U) (N.Y. Super. Ct. Jan. 23, 2009).  Another recent Vermont case addressed the "propositions that a party must have standing at the outset of litigation, and that a defect in standing at that time cannot be cured," Deutsche Bank Nat'l Trust Co. v. Parisella, No. S0758-09, 2010 Vt. Super. LEXIS 59, *5 (Vt. Super. Ct. Oct. 25, 2010) (Toor, J.).  There, the state court took great pains to thoroughly articulate the requirements of both constitutional and prudential standing, and concluded  that "a plaintiff seeking foreclosure lacks standing unless it can show it was entitled to

enforce the mortgage at the time it filed its complaint for foreclosure." Id. at *6–10. Notably, the Vermont Rule of Civil Procedure governing foreclosure proceedings likewise imposes this requirement:

> The plaintiff shall attach to the complaint copies of the original note and mortgage deed and proof of ownership thereof, including copies of all original endorsements and assignments of the note and mortgage deed. The plaintiff shall plead in its complaint that the originals are in the possession and control of the plaintiff or that the plaintiff is otherwise entitled to enforce the mortgage note pursuant to the Uniform Commercial Code.

Vt. R. Civ. P. 80.1(b)(1).

Here, the document the creditor has filed to enforce its rights is a proof of claim, rather than a complaint or motion, and the seminal date for analysis and allowance of a proof of claim, including the question of standing, is the date the bankruptcy case was commenced. See Official Form 10. Therefore, the critical inquiry is whether the Bank was the holder of the Note as of the date of Debtor's bankruptcy filing. Since the date the Note was endorsed is a material fact essential to the determination of whether the Bank is entitled to judgment as a matter of law, and since the record of undisputed material facts does not include any information about the date of the endorsement, the Court cannot adjudicate this issue on summary judgment.[1]

## CONCLUSION

For the reasons set forth above, the Bank's motion for summary judgment is denied. Unless the parties present undisputed evidence showing the date the allonge was executed, the Court will set a trial date to determine whether the Bank had standing to file the proof of claim.

This memorandum of decision constitutes the Court's findings of facts and conclusions of law.

March 18, 2011  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

[1] As the Court has denied the Bank's second motion for summary judgment on the basis that there is a genuine issue of material fact regarding the date of the endorsement, there is no need for the Court to consider the Debtor's additional arguments in opposition to the motion.